```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
BENJAMIN FIGUEROA, pro se,                      :
                                                :
                       Petitioner,              :
                                                :        MEMORANDUM AND ORDER
           -against-                            :        10-CV-4267 (DLI)
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                       Respondent.              :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

*Pro se*[1] petitioner Benjamin Figueroa ("Petitioner") filed the instant petition challenging his sentence pursuant to 28 U.S.C. § 2255. (*See generally* Pet., Docket Entry No. 1.) Petitioner contends that he received ineffective assistance of counsel during his plea allocution and sentencing. Additionally, Petitioner claims that the Court improperly calculated his sentencing range under the United States Sentencing Guidelines ("Guidelines") in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), nullified his plea agreement, and attributed an excess drug quantity to him in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Petitioner seeks relief in the form of "[a] full re-sentencing as well as an evidentiary hearing in regards to ineffective assistance of counsel." (Pet. at 6.) For the reasons set forth below, the petition is denied in its entirety.

---

[1] In reviewing the petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## BACKGROUND

**I.      Plea Agreement and Plea Hearing**

On November 17, 2006, Petitioner pled guilty, pursuant to a plea agreement, to a lesser-included offense within the one count of the indictment charging him and others with conspiracy to distribute and possess with the intent to distribute cocaine base ("crack cocaine"), which charge arose from Petitioner's membership in the Bushwick Tribe of the Latin Kings gang. (*See generally* Plea Tr., No. 05-cr-623, Docket Entry No. 240.)[2]  The plea agreement stated, *inter alia*, that the charge to which Petitioner was pleading guilty carried a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment, and that Petitioner's likely base offense level would be 32 under the Guidelines. (*See* Plea Agreement ¶ 1, No. 05-cr-623, Docket Entry No. 219-2.)  The plea agreement also indicated that Petitioner would be subject to a Guidelines sentence range of 87 to 108 months' imprisonment, based upon an adjusted offense level of 27, resulting from a three-point reduction for acceptance of responsibility and two-point reduction for a global plea disposition, and assuming Petitioner fell within Criminal History Category III. (*Id.* ¶ 2.)  Finally, the agreement noted the following:

> The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea.  If the Guidelines calculation of the Court is different from the Guidelines estimate set forth in paragraph 2, the defendant will not be entitled to withdraw the guilty plea.

(*Id.* ¶ 3.)

During the plea hearing, Petitioner, who had been placed under oath, confirmed that he had read and reviewed the plea agreement and understood all of its terms. (Plea Tr. at 19.)

---

[2] All references to "No. 05-cr-623" are to the criminal case docket underlying the instant petition.

Petitioner further stated he understood that he faced a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment. (*Id*. at 22-24.) The Court discussed the Guidelines and stated, "The bottom line is that until the date of sentencing . . . you cannot know with any certainty what the guidelines will be or whether there will be grounds to depart from them, either upwardly or downwardly, and whether the court will impose a non-guideline sentence." (*Id*. at 24.) Petitioner indicated that he understood. (*Id.*) The Court also asked Petitioner if he understood that the government's sentencing estimate was not binding on the Court. (*Id*. at 27-28.) Petitioner responded affirmatively. (*Id*.) The Court further instructed, "[I]f the estimate is wrong . . . you will not be permitted to withdraw your plea of guilty, you understand that?" (*Id.* at 28.) Petitioner responded that he understood. (*Id.*)

When questioned by the Court about his attorney, Scott Fenstermaker, Petitioner confirmed that he had an opportunity to discuss the case and the indictment with Mr. Fenstermaker. (*Id.* at 10-11.) When asked if he was fully satisfied with the representation and advice given to him by Mr. Fenstermaker, Petitioner responded affirmatively. (*Id.* at 10.) Petitioner also indicated that no one had threatened or forced him to plead guilty, and that no one had made any promise as to what his final sentence would be. (*Id.* at 29-30.) In light of Petitioner's responses, the Court stated, "Based on the information given to me, I find that [Petitioner] is acting voluntarily, that he understands his rights and the consequences of the plea, and that there is a factual basis for the plea. I therefore accept [his] plea of guilty to the lesser-included offense under the one count of the indictment . . . ." (*Id.* at 31-32.)

## II.   Presentence Investigation Report, Sentencing Hearing, and Direct Appeal

In contrast to the plea agreement, the Probation Department, in preparing the May 16, 2007 Presentence Investigation Report ("PSR"), computed a total offense level of 34, which

3

incorporated a two-point enhancement for possession of a firearm, a three-point enhancement for Plaintiff's role as a manager of one of the drug sales locations, and a three-point reduction for acceptance of responsibility. (PSR ¶¶ 64-71, 104, No. 05-cr-623.) Additionally, the PSR reflected Probation's determination that Petitioner fell within Criminal History Category III, with a resulting Guideline sentence range of 188 to 235 months' imprisonment. (*Id.* ¶ 104.) By letter dated September 12, 2007, counsel for Petitioner, Mr. Fenstermaker, set forth extensive objections to the PSR, including objections to the findings concerning Petitioner's role as manager of the drug operation and his possession of firearms. (*See* November 5, 2007 Addendum to Presentence Investigation Report, No. 05-cr-623.)

At the February 20, 2008 sentencing hearing, the Court concluded that it would: (1) grant a two-point reduction for the global plea disposition; (2) abide by the parties' agreement as to the drug amount that Petitioner would be accountable for; (3) apply a three-point enhancement based on Petitioner's managerial role during the midnight-to-noon shift of the drug operation; (4) apply a two-point enhancement for possession of a firearm; and (5) apply a three-point reduction for acceptance of responsibility. (*See* Sentencing Tr. at 3, 12, 20, No. 05-cr-623, Docket Entry No. 219-1.) As a result, the Court calculated a Guidelines range of 121 to 151 months' imprisonment based on a total offense level of 30 and Criminal History Category III. (*Id.* at 20.) The Court ultimately sentenced Petitioner to 150 months' imprisonment. (*Id.* at 22.) On March 25, 2009, the Second Circuit Court of Appeals affirmed the sentence and judgment of conviction. *United States v. Soto*, 2009 WL 765015 (2d Cir. 2009).[3]

On December 22, 2011, Petitioner filed a motion for resentencing pursuant to 18 U.S.C. § 3582(c) and U.S.S.G. § 1B1.10. On August 10, 2012, the Court denied the resentencing motion.

---

[3] Notably, as discussed in more detail *infra*, on direct appeal, the Second Circuit rejected many of the challenges that Petitioner raises in the instant petition.

4

*United States v. Figueroa*, 2012 WL 3288547 (E.D.N.Y. Aug. 10, 2012). On May 9, 2013, the Second Circuit affirmed the Court's August 10, 2012 Order. *United States v. Figueroa*, 714 F.3d 757 (2d Cir. 2013).

## DISCUSSION

### I. Ineffective Assistance of Counsel

The court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the second part of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Petitioner claims that he received ineffective assistance of counsel because his attorney, Mr. Fenstermaker: (1) withdrew objections to the PSR at the sentencing hearing without consulting Petitioner; and (2) "enticed" and "misled" Petitioner with respect to the Guidelines and his possible sentence, and "took advantage of Petitioner's mental state and intelligence." (Pet. at 4, 8-12.)

    A.    *Withdrawal of Objections to PSR*

Petitioner's ineffective assistance claim based on Mr. Fenstermaker's withdrawal of

5

objections to the PSR is unavailing.  As a preliminary matter, the record contradicts Petitioner's claim that Mr. Fenstermaker failed to consult with Petitioner before withdrawing the objections. Indeed, at the sentencing hearing, the Court specifically inquired if Petitioner needed additional time to discuss withdrawing the objections with counsel; in response, Mr. Fenstermaker confirmed, on the record, that he had discussed the matter with Petitioner and offered his advice. (Sentencing Tr. at 19.)  Moreover, Mr. Fenstermaker separately states, by sworn affidavit, that Petitioner authorized him to withdraw the objections after he advised Petitioner that the Court would likely revoke the acceptance of responsibility reduction if Petitioner persisted with the objections.  (Fenstermaker Aff. ¶ 5, No. 05-cr-623, Docket Entry No. 206.)

Nonetheless, regardless of whether Petitioner was consulted beforehand, withdrawing the objections at the sentencing hearing was an objectively reasonable and prudent decision under the circumstances of this case.  As the government notes, and Petitioner does not dispute, the government possessed ample evidence to support the managerial and firearm enhancements, including video and audio recordings of undercover purchases of crack cocaine from members of the conspiracy, statements from cooperating witnesses, and evidence obtained during an execution of a search warrant at Petitioner's residence. (Mem of Law in Opp'n to Section 2255 Pet. at 12, Docket Entry No. 6; PSR ¶¶ 15-50.)  Significantly, when questioned by the Court at the sentencing hearing, Petitioner himself admitted he resided at the apartment in which firearms were recovered and was involved in operating the midnight-to-noon shift of the drug operation. (Sentencing Tr. at 20.)  As such, Mr. Fenstermaker's "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

Moreover, even assuming, *arguendo*, that Mr. Fenstermaker's actions could be

6

considered objectively unreasonable, Petitioner fails to demonstrate prejudice. Indeed, at the sentencing hearing, the Court stated that Petitioner's objections to the PSR "amount[ed] to a lack of acceptance of responsibility" (Sentencing Tr. at 14), and indicated Petitioner would not receive a three-point reduction for acceptance of responsibility if he persisted with the objections.[4]  Thus, withdrawing the objections, far from prejudicing Petitioner, ultimately served to Petitioner's benefit and persuaded the Court to apply a three-point reduction for acceptance of responsibility. (Sentencing Tr. at 18-20.)

Accordingly, Petitioner's claim of ineffective assistance based on Mr. Fenstermaker's withdrawal of the PSR objections is without merit.

B.   *Alleged Erroneous Advice and Coercion*

The remainder of Petitioner's ineffective assistance claims—namely, that Mr. Fenstermaker "enticed" him to accept a guilty plea, "misled" him with respect to Guidelines sentencing range and base offense level, and "took advantage of his intelligence and mental state" (Pet. at 8-12)—are also unavailing.

At the outset, Petitioner's claim that Mr. Fenstermaker enticed or misled him about the Guidelines or his potential sentence contradict Petitioner's prior sworn statements at the plea allocution, at which Petitioner confirmed that he was fully satisfied with the representation and advice of Mr. Fenstermaker, that no one had threatened or forced him into pleading guilty, and that no one "had made any promise . . . as to what [his] final sentence will be" (Plea Tr. at 10-11, 29-30). *See United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (recognizing that plea

---

[4] (*See* Sentencing Tr. at 18 ("I agree with [Mr. Fenstermaker] that there are circumstances in which objecting to certain things that are said in the PSR as to the role participation and so on simply amounts to an objection to a factual inaccuracy. But then there comes a point when the objections are so many and to such a degree that it does amount to a backtracking or [sic] acceptance of responsibility, and I frankly think [Petitioner] is there.").)

7

allocution testimony "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). Petitioner's claim is further undermined by the sworn statements of Mr. Fenstermaker, who claims that he did, in fact, inform Petitioner that he could be sentenced more harshly than the initial Guideline estimates. (Fenstermaker Aff. ¶ 2.) Moreover, nothing in the record suggests that Defendant lacked the requisite mental capacity to enter a knowing and voluntary plea.

In any event, the Court need not decide whether Mr. Fenstermaker made inaccurate predictions concerning Petitioner's sentence because, where, as here, Petitioner's "specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether [Petitioner] was *aware of actual sentencing possibilities*, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (emphasis added and citation omitted). Accordingly, even if, hypothetically, Mr. Fenstermaker had given Petitioner erroneous advice, Petitioner did not suffer prejudice because he was aware at the plea hearing, *inter alia*, that: (1) the charge to which Petitioner was pleading guilty carried a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment; (2) the plea agreement's sentencing estimate could be wrong and was not binding on the Court; and (3) findings by Probation could influence the Guideline range. *See, e.g.*, *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (concluding that "clear and thorough plea allocution" adequately apprised petitioner of actual sentencing possibilities); *Rosenfeld v. United States*, 972 F. Supp. 137, 146 (E.D.N.Y. 1997) ("Any inaccurate prediction that may have been made by [petitioner's] counsel was cured by the Court's detailed questioning of the petitioner at the plea

allocution, which alerted the petitioner of the 'actual sentencing possibilities.'" (quoting *Ventura*, 957 F.2d at 1058)).

In sum, under these circumstances, Petitioner has not shown that, but for Mr. Fenstermaker's purported misrepresentations, Petitioner would not have pled guilty and would have insisted on going to trial.

**II.      Sentencing**

Petitioner also contends that the Court erred by: (1) failing to exercise its discretion to depart, pursuant to *Kimbrough v. United States*, 552 U.S. 85 (2007), from the crack and cocaine powder ratio set forth in the Guidelines; and (2) "rejecting the stipulated drug amount," "nullifying the plea agreement," and attributing "an excess drug quantity" to Petitioner in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*See* Pet. at 13-14.) Petitioner's arguments are unavailing for the same reasons previously stated by the Second Circuit on Petitioner's direct appeal:

> Here the record on appeal clearly demonstrates that the district court understood its authority under *Kimbrough*. As Figueroa notes, his counsel raised the issue and argued the point at some length. Moreover, the district court also addressed the issue in the context of [co-defendant] Almanzar's sentence, which preceded Figueroa's. As the district court said at that time,
>
>> In some of these cases [after taking into account the Section 3553(a) factors], I have found that the [crack/powder] ratio did impact overly severely with respect to the sentence to be imposed on a particular defendant. But, again, what *Kimbrough* and *Gall* still teach[] is that in taking a look at these § 3553(a) factors, the Court has to make a particularized finding in each case.
>
> Under the facts of this case, we have no doubt that the district court understood the scope of its discretion under *Kimbrough* although it declined to exercise that discretion in Figueroa's favor.
>
> Figueroa also contends that the district court "effectively rejected and nullified the plea agreement." But the district court did not reject the agreement; in fact the court adopted certain aspects of it. For example, the court subtracted two points

9

> for the global plea arrangement, even though that had not been recommended by the Probation Department. Similarly, the court adopted the stipulated drug quantities, notwithstanding its stated suspicion that the stipulated amount underestimated the full extent of Figueroa's responsibility.

*United States v. Soto*, 2009 WL 765015, at *3 (2d Cir. Mar. 25, 2009).[5]

Moreover, merits aside, Petitioner's claims concerning his sentencing are also procedurally improper given that "[i]t is well-established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (quoting *United States v. Satin*, 252 F.3d 79, 83) (2d Cir. 2001)).

In sum, Petitioner has failed to show any basis for section 2255 relief with respect to his sentence.

---

[5] The Second Circuit's opinion did not discuss *Apprendi*, a case in which the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Nonetheless, Petitioner fails to explain with specificity how *Apprendi* could apply here given that the Court not only sentenced Petitioner to a term of imprisonment *below* the statutory maximum, but also adopted the parties' stipulated drug quantity, despite viewing it as "a grossly conservative estimate based upon [Petitioner's] role in this case." (Sentencing Tr. at 8.)

**CONCLUSION**

For the reasons set forth above, Petitioner's request for relief pursuant to Section 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      August 30, 2013

/s/
DORA L. IRIZARRY
United States District Judge